**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| Michael Beaumont, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>Christopher Paucek, Paul Lalljie, and Matt Norden,<br><br>    Defendants. | Case No. 8:24-cv-01723-ABA<br><br>Hon. Adam B. Abelson |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.     PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MISSTATEMENT ......................2

       A.     Statements About Ongoing Transition To Platform Company And
              Revised Marketing Strategy Are Not Even Actionable, Much Less False..............3

              1.     None Of The Challenged Statements Is Actionable ...................................3

              2.     In Any Event, Plaintiff Alleges No Contemporaneous Facts
                     Contradicting The Challenged Statements.......................................................7

       B.     Statements Concerning Partner Institutions and Portfolio Management
              Are Neither Actionable Nor False .............................................................................8

II.    PLAINTIFF HAS NOT PLED A STRONG INFERENCE OF SCIENTER ...................11

       A.     Plaintiff Still Offers No Rational Theory Of Fraud................................................11

       B.     The Non-Fraudulent Inference Is More Compelling ...............................................14

III.   PLAINTIFF HAS NOT PLED LOSS CAUSATION ......................................................14

IV.    PLAINTIFF HAS NOT PLED A SECTION 20(A) CLAIM ..........................................15

CONCLUSION....................................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ash v. Powersecure Int'l, Inc.*,
    2016 WL 4939306 (E.D.N.C. Sept. 14, 2016)............................................................... 15

*Boykin v. K12, Inc.*,
    54 F.4th 175 (4th Cir. 2022) .......................................................................................... 16

*City of Cape Coral v. Emergent Biosolutions*,
    2017 WL 11562247 (D. Md. July 6, 2017)....................................................................... 4

*Dunn v. Borta*,
    369 F.3d 421 (4th Cir. 2004) ........................................................................................... 4

*Elec. Workers Pension Tr. Fund of IBEW Loc. Union No. 58 v. CommScope, Inc.*,
    2013 WL 4014978 (W.D.N.C. Aug. 6, 2013)................................................................... 5

*Employees' Ret. Sys. of Baton Rouge v. MacroGenics*,
    2021 WL 4459218 (D. Md. Sept. 29, 2021) .................................................................... 6

*Fanucchi v. Enviva*,
    2024 WL 3302564 (D. Md. July 3, 2024)..................................................................... 3, 5

*Ferdinand-Davenport v. Children's Guild*,
    742 F. Supp. 2d 772 (D. Md. 2010) ................................................................................. 3

*Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*,
    336 F. Supp. 3d 196 (S.D.N.Y. 2018).............................................................................. 8

*Freedman v. Value Health*,
    34 F. App'x 408 (2d Cir. 2002) ....................................................................................... 4

*Gasner v. Bd. of Sup'rs of the Cnty. of Dinwiddie, Va.*,
    103 F.3d 351 (4th Cir. 1996) ........................................................................................... 6

*Gray v. Wesco Aircraft Holdings, Inc.*,
    454 F. Supp. 3d 366 (S.D.N.Y. 2020).............................................................................. 4

*In re Capstead Mort. Corp. Sec. Litig.*,
    258 F. Supp. 2d 533 (N.D. Tex. 2003) ............................................................................ 9

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) .................................................................. 15

*In re Humphrey Hosp. Sec. Litig.*,
219 F. Supp. 2d 675 (D. Md. 2002) ................................................................................ 14

*In re Lions Gate Entm't. Corp. Sec. Litig.*,
165 F. Supp. 3d 1 (S.D.N.Y. 2016) ................................................................................ 17

*In re Marriott Int'l, Inc.*,
31 F.4th 898 (4th Cir. 2022) .......................................................................................... 12

*In re Marriott Int'l, Inc.*,
543 F. Supp. 3d 96 (D. Md. 2021) ................................................................. 6, 7, 11, 12

*In re Triangle Cap. Corp. Sec. Litig.*,
988 F.3d 743 (4th Cir. 2021) ........................................................................................... 1

*In re USEC Sec. Litig.*,
190 F. Supp. 2d 808 (D. Md. 2002) ................................................................................. 6

*In re Wachovia Equity Sec. Litig.*,
753 F. Supp. 2d 326 (S.D.N.Y. 2011) .............................................................................. 9

*Katyle v. Penn Nat'l Gaming, Inc.*,
637 F.3d 462 (4th Cir. 2011) ......................................................................................... 18

*KBC Asset Mgmt. NV v. DXC Tech.*,
19 F.4th 601 (4th Cir. 2021) ..................................................................................... 9, 10

*Kong v. Fluidigm Corp.*,
2023 WL 2134394 (9th Cir. Feb. 21, 2023) .................................................................... 4

*Lerner v. Nw. Biotherapeutics*,
273 F. Supp. 3d 573 (D. Md. 2017) ................................................................................ 2

*Leykin v. AT & T Corp.*,
423 F. Supp. 2d 229 (S.D.N.Y. 2006) ............................................................................ 18

*Metzler Inv. GMBH v. Corinthian Colls.*,
540 F.3d 1049 (9th Cir. 2008) ................................................................................... 9, 14

*Newtyn Partners LP v. All. Data Sys. Corp.*,
2025 WL 872967 (S.D. Ohio Mar. 20, 2025) ............................................................... 16

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
575 U.S. 175 (2015) ......................................................................................................... 7

*Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*,
918 F.3d 312 (4th Cir. 2019) ........................................................................................... 6

*Phillips v. LCI Int'l,*
 190 F.3d 609 (4th Cir. 1999) ............................................................................. 13, 14

*Recupito v. Prudential Sec., Inc.*,
 112 F. Supp. 2d 449 (D. Md. 2000) ............................................................................ 11

*Salim v. Mobile Telesystems,*
 2022 WL 966903 (2d Cir. Mar. 31, 2022) ............................................................... 14

*San Antonio Fire & Police Pension Fund v. Syneos Health Inc.*,
 75 F.4th 232 (4th Cir. 2023) ...................................................................... 13, 17

*Tchrs. Ret. Sys. Of LA v. Hunter*,
 477 F.3d 162 (4th Cir. 2007) ............................................................................. 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) ....................................................................................... 2, 17

*Yates v. Mun. Mortg. & Equity, LLC*,
 744 F.3d 874 (4th Cir. 2014) ........................................................................ 10

## STATUTES

15 U.S.C. § 78u-5(c) .......................................................................................................4

## REGULATIONS

17 C.F.R. § 240.10b-5(b).............................................................................................10

**INTRODUCTION**

Plaintiff's Opposition is notable for what it does not challenge.  Plaintiff does not dispute that Norden must be dismissed from this case because he did not make any alleged misstatement. Plaintiff does not contest that 30 of the 39 statements he challenged in the Amended Complaint ("AC") are not actionable and therefore cannot form the basis of a securities-fraud claim.  And Plaintiff abandons his argument that Defendants made suspicious stock sales.  Instead, Plaintiff doubles down on hindsight-driven allegations, attempting to use the fact that (in Plaintiff's words) a few Partners "ultimately" left 2U and 2U "ultimately" filed for bankruptcy to argue that a handful of optimistic statements about 2U's prospects made three months earlier must have been materially false and misleading.  Opp. 1.  The Fourth Circuit has consistently dismissed such "fraud by hindsight" pleadings, and the same outcome is required here.  *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 753 (4th Cir. 2021).  Plaintiff has not pled a claim for three independent reasons.

First, every challenged statement is nonactionable *as a matter of law* because it is immaterial puffery, a subjective opinion, and/or a forward-looking projection protected by the PSLRA's safe harbor.  Plaintiff does not dispute, and therefore concedes, that the vast majority of the alleged misstatements are nonactionable—including every single statement concerning 2U's relationships with Partners.  Beyond that, Plaintiff's falsity theory rests on a fiction:  that Paucek and Lalljie purportedly told investors that 2U was "in control of its relationships" and the edX platform would "meet the needs" of every 2U Partner.  Opp. 8, 18.  But no Defendant ever said that.  On the contrary, Defendants repeatedly warned investors that they would "see 2U aggressively manage [its] portfolio," "exit programs that do not fit," and that the Company could "experience difficulties … in realizing the expected benefits of" its shift to a platform company. Ex. 10 at 57; Ex. 16 at 5.  Regardless, Plaintiff cannot identify any *fact* that existed at the time of

the statements showing they were false when made and therefore has not met the PSLRA's high bar for pleading a false or misleading statement.

Second, the AC lacks particularized facts supporting a "strong inference" that Defendants acted with fraudulent intent, much less one that is "cogent and at least as compelling" as the nonculpable inference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Plaintiff effectively concedes his failure to plead motive, arguing that this failure isn't necessarily "fatal," even as he acknowledges it could "weigh[] heavily" against him. Opp. 26-27. But Plaintiff has no persuasive scienter argument to make up for his lack of motive allegations. The Opposition relies almost entirely on anonymous, isolated anecdotes from low-level former employees that do not contradict anything Defendants said, much less show that any Defendant made a challenged statement knowing it was false or with a severely reckless disregard for the truth. Plaintiff's back-up reliance on the so-called "core operations" doctrine is even weaker; Plaintiff does not identify *anything* concrete Defendants had access to that specifically contradicted a statement when made.

Finally, none of Plaintiff's proffered corrective disclosures relates back to any challenged statement, so loss causation is plainly lacking too.

This case epitomizes the "meritless securities fraud claim" that Congress intended the PSLRA to preclude from reaching discovery. *Lerner v. Nw. Biotherapeutics*, 273 F. Supp. 3d 573, 585 (D. Md. 2017). It should be dismissed.

## ARGUMENT

## I.    PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MISSTATEMENT

The Opposition fails to cure any—let alone all—of the many flaws in Plaintiff's falsity allegations. *See* Mot. 17-23. Plaintiff now pursues only two categories of alleged misstatements (down from the three the AC attempted to plead):  expectations about 2U's ongoing transition to

2

a platform company and discussions of 2U's Partners.[1]  As a matter of law, all of the statements Plaintiff challenges are *per se* nonactionable.  Mot. 11-16.  And, regardless, Plaintiff cannot point to any particularized fact rendering any specific statement false when made.  *Id.* at 17-20.  For either or both of these reasons, the AC should be dismissed for failure to plead falsity.

      **A.**      **Statements About Ongoing Transition To Platform Company And Revised Marketing Strategy Are Not Even Actionable, Much Less False**

      **1.**      **None Of The Challenged Statements Is Actionable**

**<u>Puffery.</u>**  The Opposition does not dispute that 16 of the 18 challenged statements about edX are puffery and cannot form the basis of a securities-fraud claim.  *See* App. A. Stmts. 1, 2, 5, 6, 12, 13, 14, 15, 16, 19, 20, 22, 23, 26, 28, 29; *see Fanucchi v. Enviva*, 2024 WL 3302564, at *21 n.20 (D. Md. July 3, 2024) (plaintiff's failure to "respond to [] arguments" in opposition means he "conceded the[] points").  Instead, Plaintiff argues only that Defendants incorrectly identified two statements as puffery—that edX was "off to a great start" and "thriving."  Opp. 9; App. A Stmts. 7, 32.  According to Plaintiff, these statements are actionable because they are "concrete."  Opp. 9.  This assertion ignores the cases Defendants cited, Mot. 11-12, and also common sense. Statements that a business enterprise is "robust" or "thriving" are "precisely the kind of 'feel good monikers'" that no investor would rely on.  *Kong v. Fluidigm Corp.*, 2023 WL 2134394, at *2 (9th Cir. Feb. 21, 2023); *see Freedman v. Value Health*, 34 F. App'x 408, 411 (2d Cir. 2002) (describing business as "'thriving' was [] at worst non-actionable puffery").  They are nothing like the "very specific misrepresentations" in the cases Plaintiff cites, which were objectively verifiable (and involved different facts).  Opp. 9 (citing *Dunn v. Borta*, 369 F.3d 421, 431 (4th Cir. 2004)

---

[1] Plaintiff's Opposition ignores Defendants' arguments about alleged misstatements related to 2U's revenue-recognition processes, *see* Mot. 22-23; App. A. Stmts. 3, 8, 10, 17, 24, 30, 33, therefore abandoning any challenge to those statements, *see Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010).  Nor does Plaintiff dispute that Norden did not "make" any of the challenged statements, so no claim can be stated against him.  Mot. 23.

(statements that business "had sold 225 … units" and "planned to introduce" product "in early 2021"); *City of Cape Coral v. Emergent Biosolutions*, 2017 WL 11562247, at \*4 (D. Md. July 6, 2017) (defendant previously stated government would purchase all doses of its vaccine)).

**Safe Harbor.** Defendants' Motion separately established that 13 challenged statements about edX are forward-looking and protected by the PSLRA's safe harbor. Mot. 13-15; App. A. Stmts. 2, 5, 6, 12, 13, 14, 15, 16, 19, 20, 23, 28, 32.[2] To plead an actionable forward-looking statement, the AC had to allege particularized facts showing *both* (1) "actual knowledge" of falsity, *and* (2) a lack of "meaningful cautionary" language. Mot. 13-14 (citing 15 U.S.C. § 78u-5(c)). The Opposition confirms it did not.

The Opposition ignores the "actual knowledge" prong entirely, therefore conceding that all challenged forward-looking statements are protected under the safe harbor. *Fanucchi,* 2024 WL 3302564, at \*21 n.20. Regardless, as discussed below, Plaintiff has not even pled falsity, much less that a Defendant had *actual knowledge* of falsity when making a statement. On the contrary, Defendants' own statements showed the transition was bearing fruit at the time of the alleged misstatements—among other things, the acquisition had quickly increased 2U's learner base, reduced its marketing spend, and significantly increased the number of leads, including "organic" or "free leads." Ex. 1 at 5, 13; Ex. 8 at 4-5, 8-9; Ex. 13 at 6, 23; Ex. 16 at 4, 7-8; Ex. 19 at 4-6.

---

[2] Plaintiff only disputes the forward-looking nature of one statement: Paucek's comment that "we've become increasingly confident in our platform strategy." Opp. 11; App. A. Stmt. 12. But statements expressing "confidence" in a strategy are "forward-looking." *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 390 (S.D.N.Y. 2020). Plaintiff cites no contrary authority. And while Plaintiff argues that Paucek's statements that "we're seeing material progress" and the "platform strategy is thriving" and Lalljie's statement that "[w]e continue to see returns" are not forward-looking, Defendants never claimed they were. Opp. 11. These statements are not actionable for other reasons—they are puffery, nonactionable opinions, and—most importantly— not false, including because Paucek and Lalljie articulated many supporting facts for their belief the transition was working during the same calls as the alleged misstatements. Mot. 12, 13, 16.

On the second prong, Plaintiff cannot escape the company-specific cautionary language that accompanied each of the challenged forward-looking statements—which would render the statements inactionable *even if* Defendants knew they were false. Mot. 14-15. While Plaintiff argues that "the adequacy of cautionary language is a question of fact," Opp. 11, a chorus of motion-to-dismiss decisions have already rejected this argument. *See, e.g.*, *Elec. Workers Pension Tr. Fund of IBEW Loc. Union No. 58 v. CommScope, Inc.*, 2013 WL 4014978, at *12 (W.D.N.C. Aug. 6, 2013) (collecting cases); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 319-21 (4th Cir. 2019) (affirming dismissal because cautionary language was adequate). And Plaintiff's argument that 2U's cautionary language was "boilerplate" and "not meaningful" is itself "boilerplate" and devoid of analysis sufficient to raise a question of fact. Opp. 11. Plaintiff does not explain *why* the specific cautionary language that accompanied each forward-looking statement was not "meaningful" under Fourth Circuit law, or cite any decision where similar cautionary language was deemed inadequate. Nor could he. Courts have repeatedly held comparable language to be adequate to trigger the PSLRA's safe harbor. Mot. 14-15.[3]

Plaintiff also contends that "the cautionary language identified by Defendants" was itself misleading because it "warned of risks that had already materialized." Opp. 11. But Plaintiff does not respond to Defendants' argument that risk disclosures generally are not actionable in the Fourth Circuit. Mot. 22. And, regardless, Plaintiff has not pled particularized facts showing that a specific warned-of risk had either materialized or become a "near certainty" at the time the corresponding disclosure was made. *See infra* at 7-8; *see also Employees' Ret. Sys. of Baton Rouge v. MacroGenics*, 2021 WL 4459218, at *12 (D. Md. Sept. 29, 2021). If merely challenging an

---

[3] *See, e.g.*, *In re Marriott Int'l, Inc.*, 543 F. Supp. 3d 96, 121 (D. Md. 2021); *Gasner v. Bd. of Sup'rs of the Cnty. of Dinwiddie, Va.*, 103 F.3d 351, 359 (4th Cir. 1996); *In re USEC Sec. Litig.*, 190 F. Supp. 2d 808, 821-22 (D. Md. 2002).

accompanying risk disclosure were enough, any plaintiff could overcome—and thus gut altogether—the PSLRA's statutory protection with a bald assertion of inadequacy.

**Opinion Statements.**  Plaintiff also does not deny that seven challenged statements about the transition are opinions presumptively immune from liability under *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015).  Mot. 15-16; App. A. Stmts. 7, 12, 14, 15, 20, 29, 32.  These statements are not actionable unless Plaintiff pleads *facts* indicating that (1) "the speaker did not hold the belief she professed," (2) the asserted opinion "contain[s] [false] embedded statements of fact," or (3) an "excluded fact shows that [Defendants] lacked [a reasonable] basis for [their opinions]."  *Omnicare*, 575 U.S. at 185-86, 196.  Plaintiff makes a conclusory argument that statements such as "we believe these structural changes will [] strengthen our bottom line," ¶ 179, could "not have been sincerely held given Defendants' contemporaneous knowledge of problems," Opp. 12.  But Plaintiff has not identified the supposed "problems" that made these opinions false at the time, let alone pled particularized factual allegations showing "Defendants did not actually believe" these "statements of optimism." *Marriott*, 543 F. Supp. 3d at 119.  On the contrary, as Defendants explained in the Motion, the AC pleads the exact opposite—that "2U's leadership *expected*," "*anticipated*," or "*thought*" the transition would *work*.  Mot. 15.  Plaintiff had no response in his Opposition.

Merely quoting the standard from *Omnicare*, Plaintiff also asserts that "Defendants omitted 'particular (and material) facts going to the basis for the[ir] opinion[s]' and omitted 'material facts about the [defendants] inquiry into or knowledge concerning' the opinions."  Opp. 12.  But Plaintiff again fails to explain what those particularized and material omissions were.  Such a vague assertion is not enough to meet *Omnicare*'s "high bar."  *Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 228 (S.D.N.Y. 2018).

## 2.    In Any Event, Plaintiff Alleges No Contemporaneous Facts Contradicting The Challenged Statements

Even if Plaintiff was challenging a potentially actionable statement of present fact (he is not), the AC's "basic problem is that the facts it alleges do not contradict [Defendants'] public disclosures." *Tchrs. Ret. Sys. Of LA v. Hunter*, 477 F.3d 162, 182 (4th Cir. 2007).

Plaintiff argues that statements about the edX transition were false because "[t]he edX platform and interface did not meet the needs of 2U's existing Partner Institutions" and, at some later point, there was a "decrease in full course equivalent enrollments." Opp. 8, 26. The AC, however, does not allege that Defendants *ever* promised the edX platform would "meet the needs" of every 2U Partner or boost enrollment regardless of macro-economic factors. On the contrary, Defendants repeatedly warned that 2U "may experience difficulties in integrating the operations of edX … and in realizing the expected benefits of the [acquisition]" and that clients "may attempt to terminate or may not renew their relationship with us." Mot. 7. In addition, Plaintiff's vague falsity allegations—which do not "specif[y] [a] time period" for the declining enrollments or identify particular, concrete Partner problems—cannot constitute "specific contradictory facts" necessary to make the alleged misstatements false. *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 352 (S.D.N.Y. 2011). Ultimately, Plaintiff's theory is classic fraud-by-hindsight pleading—asserting that *later* events like declines in enrollment make *earlier* statements false— which the Fourth Circuit routinely rejects as insufficient to plead a securities claim. Mot. 17-20.[4]

Plaintiff's reliance on the opinion of *one* former employee (FE-2), who purportedly thought edX's launch was "really rough at the start," does not salvage his claims. Opp. 8. The amorphous

---

[4] Moreover, Plaintiff's opposition, like his complaint, still relies on puzzle pleading, forcing Defendants and the Court to try to connect the dots between a scattershot collection of alleged misrepresentations and a parade of repeated facts that allegedly make each false. Mot. 16-17. That alone is reason enough to dismiss this case. *See, e.g.*, *In re Capstead Mort. Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 552-53 (N.D. Tex. 2003).

notion that edX was "really rough" in the beginning is too vague to constitute a particularized *fact* contradicting a statement. *See, e.g.*, *Metzler Inv. GMBH v. Corinthian Colls.*, 540 F.3d 1049, 1070 (9th Cir. 2008) (plaintiff's explanation of "how and why the statements were false" was "decidedly vague"). Whether a transition was "really rough" or (in Paucek's words) "off to a great start" but with "much more to do" is subject to interpretation. Mot. 18-19. In any event, the AC does not allege that any speaker "agreed with [FE-2's] assessment." *KBC Asset Mgmt. NV v. DXC Tech.*, 19 F.4th 601, 609 (4th Cir. 2021) (dismissing securities-fraud claim despite allegations employees disagreed with business decision); *see* Mot. 18-19. As Defendants' own statements showed, they were genuinely optimistic that the edX transition would succeed, even if it might take time. Ex. 4 at 5. And it is well-settled that a "mere business disagreement" over the prospects of a strategy "does not amount to securities fraud." *KBC*, 19 F.4th at 609; *see Yates v. Mun. Mortg. & Equity*, *LLC*, 744 F.3d 874, 887 (4th Cir. 2014). Plaintiff has not pled a claim based on the edX statements.

### B. Statements Concerning Partner Institutions and Portfolio Management Are Neither Actionable Nor False

The Opposition does not dispute that each of the alleged misstatements about 2U's Partner relationships are not actionable—they are puffery, nonactionable opinion, and/or forward-looking statements protected by the safe-harbor. Mot. 20-22; App. A Stmts. 4, 9, 11, 18, 21, 25, 27, 31, 34, 35, 36, 37, 38, 39. The Opposition instead fixates solely on falsity, claiming that optimistic statements about 2U's relationships with Partners were false because 2U "had already terminated some contracts in 2022 and the first six months of 2023 and was negotiating even bigger terminations later in 2023." Opp. 13. But such falsity arguments are irrelevant if the statements are not actionable, as the Opposition concedes. Plaintiff's failure to contest the nonactionable nature of these statements means they cannot form the basis of a claim.

Regardless, Plaintiff's falsity theory does not work, as 2U *disclosed* the very things Plaintiff alleges make these statements false. Those disclosures are critical—and properly considered on a motion to dismiss—because "the focus of the court's inquiry is not whether a particular statement, taken separately, was literally true, 'but whether defendants' representations, taken together and in context, would have mis[led] a reasonable investor.'" *Recupito v. Prudential Sec., Inc.*, 112 F. Supp. 2d 449, 460 (D. Md. 2000). Applying this principle, courts in this District routinely dismiss securities-fraud complaints when companies "warned investors of the very risks Plaintiff claims were not disclosed," even if those warnings appear in separate statements. *Id.* at 457; *see Marriott*, 543 F. Supp. 3d at 134. The same result should follow here. 2U consistently stated that its transition would necessarily "involve … aggressively manag[ing] our portfolio … [and] exit[ing] programs." Ex. 16 at 5. It also made clear that "we're continually pretty much never not in some kind of discussion or negotiation with our clients." *Id.* at 10. And 2U warned that there was no guarantee "existing university clients" would "contin[ue] or expand[]" their relationships with 2U, and that clients "may attempt to terminate or may not renew their relationship with us." Ex. 3 at 18; Ex. 12 at 17. It would be absurd for vague statements about Partners to support a securities fraud claim because of the very things 2U repeatedly disclosed.

Even setting aside these disclosures, no well-pled fact shows that Defendants knew anything contradicting their expressions of optimism—particularly when more than 27 Partners had committed to delivering content on edX, some were expanding their offerings, and the Defendants viewed terminations of certain programs as a *benefit*, allowing 2U to generate cash to invest in growth areas. Mot. 18-19. The fact that 2U and a few Partners mutually agreed to wind down programs that did not fit 2U's strategy, *see* Opp. 4-5, does not contradict general expressions of optimism in Partners as a whole.

Plaintiff is seemingly pursuing an omission theory based on the wind-down of certain USC programs, arguing that 2U needed to disclose sometime in early 2023 "the scale of the negotiations" with USC and the "likely impact on 2U's business" from USC exiting. Opp. 15. But the AC does not contain any well-pled allegations that any Defendant *knew* USC and 2U would decide to wind-down any program at the time of a corresponding challenged statement, let alone what "impact" such an exit would have on 2U. *See infra* at 13-14. Rather, Plaintiff's theory is impermissible hindsight—relying on USC's *later* exit and 2U's *later* bankruptcy. Mot. 17-18, 21.

Regardless, Defendants had no duty to disclose any predictions about USC because they never spoke on that topic. The securities laws "do not create an affirmative duty to disclose any and all material information"; instead, disclosure is "required ... only when necessary 'to make ... statements made, in the light of the circumstances under which they were made, not misleading.'" *In re Marriott Int'l, Inc.*, 31 F.4th 898, 901-02 (4th Cir. 2022) (quoting 17 C.F.R. § 240.10b-5(b)). As a result, "companies can control what they have to disclose" by "controlling what they say to the market." *Id.* Here, the AC does not allege that Defendants ever stated that USC would maintain its partnership with 2U. On the contrary, Defendants warned that existing Partners might leave and that 2U was continually in negotiations with clients. Mot. 6, 17. The vague statements Plaintiff targets indicated confidence in the overall potential of client relationships but did not guarantee the permanence of any single relationship.[5] Plaintiff's failure to pinpoint any statement that was misleading absent additional information about USC is fatal to his omissions theory.[6]

---

[5] The fact that USC took over some duties that were previously 2U's in 2023—allegedly making it "seem[]" to a few former employees that USC no longer trusted 2U, *see* Opp. 15 (citing ¶ 85)—fails for the same reasons. Regardless, nothing in the AC shows that the Defendants agreed with those employees' assessment. *See supra* at 8.

[6] Paucek's statement that "we are not reworking any contracts at this point"—which is not in the "Alleged Misstatements" section of the AC—cannot support a claim either. The context of this statement is critical: Paucek was responding to a question about potential consequences from the

## II.    PLAINTIFF HAS NOT PLED A STRONG INFERENCE OF SCIENTER

### A.    Plaintiff Still Offers No Rational Theory Of Fraud

A securities-fraud claim requires intent to deceive investors. Mot. 24. Because executives are not presumed to lie for no reason, the absence of an explanatory motive "'weighs heavily against [the plaintiff] in the scienter analysis." *San Antonio Fire & Police Pension Fund v. Syneos Health Inc.*, 75 F.4th 232, 242 (4th Cir. 2023). Here, Plaintiff offers no motive for the alleged fraud—meaning he must point to "correspondingly greater" "circumstantial evidence of fraud." *Id.* He has not met that burden.

Plaintiff concedes that not one Defendant had any financial incentive to lie about 2U's transition. There are no suspiciously timed stock sales, nor unusual pecuniary benefits of any kind. Instead, Plaintiff speculates that Paucek might have misrepresented 2U's relationships solely because of his "vanity" to avoid disclosing the failure of a business strategy. Opp. 26. But this is pure speculation; Plaintiff does not cite a *single* allegation in the AC supporting it. And regardless, such a circular argument—that a defendant lied because he wanted to conceal the truth—could be invoked in every securities case. But generic corporate motives applicable in virtually all cases "cannot demonstrate scienter." *Phillips*, 190 F.3d at 622-23.

Despite the absence of motive, Plaintiff argues he can show scienter because Defendants had "access to" information about Partners and enrollment. Opp. 19-25. That is not enough; the AC had to, but did not, allege "particularized facts [that] show what Defendants knew, when and how they knew it, and how their knowledge rendered particular statements false." *In re Humphrey*

---

Department of Education potentially revising its rule governing how universities can compensate third-party service providers. Ex. 13 at 6, 16. Any reasonable investor would have understood, given this context, that Paucek was speaking only to whether compensation structures with Partners might need "reworking" in light of regulatory changes, not whether Partners might leave. *See Phillips v. LCI Int'l*, 190 F.3d 609, 615 (4th Cir. 1999) (plaintiff cannot concoct misstatement by "isolat[ing]" it "from its context").

*Hosp. Sec. Litig.*, 219 F. Supp. 2d 675, 684 (D. Md. 2002). That is, the AC must allege Defendants knew facts directly "contradict[ing] their public statements" at the time. *Salim v. Mobile Telesystems*, 2022 WL 966903, at *2 (2d Cir. Mar. 31, 2022). The AC does not allege that.

Take Plaintiff's argument that "Paucek and Lalljie had access to and closely monitored 2U's enrollment and marketing data as well as feedback from Partner[s]." Opp. 19. Not only is this allegation entirely conclusory, but Plaintiff does not identify, with particularity, *what* in that data specifically contradicted a statement. These types of general knowledge allegations cannot replace the particularized allegations the PSLRA requires. *Metzler*, 540 F.3d at 1068 ("general awareness of the [company's] day-to-day workings … does not establish scienter").

Same for Plaintiff's invocation of the so-called "core operations" doctrine, Opp. 25-26, which applies only in "rare circumstances[,] where the nature of [a] relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of [it]," *Ash v. Powersecure Int'l, Inc.*, 2016 WL 4939306, at *6 (E.D.N.C. Sept. 14, 2016). This is not one of those rare circumstances because Plaintiff has not identified any specific "fact" it would have been "absurd" for Defendants not to know given their "knowledge" of 2U's priorities. That reality makes this case fundamentally different than those Plaintiff cites. Opp. 25 (citing *In re Hi-Crush Partners L.P. Sec. Litig.*, 2013 WL 6233561, at *26 (S.D.N.Y. Dec. 2, 2013) (reasonable to "infer[]" defendants knew a key customer had *already* repudiated its contract)).

Regardless, even if Plaintiff had shown—with particularity—that Defendants knew about a decline in enrollments or some "issues" with some Partners, that would not establish a strong inference of scienter. Defendants never claimed enrollment would *not* decline or that all Partners would remain satisfied; instead, they repeatedly emphasized that 2U could have problems "successfully driving and maintaining student enrollment," and there could be "reduced support

12

from [2U's] university clients" amidst its transition.  Ex. 3 at 17-19; Ex. 12 at 16-17, 19.  Those warnings undercut any inference of scienter.  Mot. 26.  And Defendants had multiple valid reasons to express optimism about the transition: several 2U Partners had decided to "expand[]" their offerings with 2U, Ex. 1 at 5, and the transition quickly reduced 2U's marketing spend, Mot. 7.  Ultimately, Plaintiff's failure to pinpoint "clear falsity" in the statements is yet another "strike" against Plaintiff's scienter argument.  *Boykin v. K12, Inc.*, 54 F.4th 175, 186 (4th Cir. 2022).

Finally, the bare fact that Defendants spoke about various Partners does not establish an intent to mislead.  Plaintiff's theory is that Paucek and Lalljie's statements in August 2023 that 2U "expected to sunset some programs in Q2 [2023]," but "pushed" the termination of these programs "into the back half" of the year shows they "knew 2U was losing" USC at the time because (1) 2U terminated its partnership with USC in November 2023; and (2) Defendants therefore must have been engaged in termination negotiations "through 2023 and possibly [] in 2022."  Opp. 23 (quoting ¶¶ 255, 258).  But even assuming Defendants thought USC might exit the next quarter, there are no allegations in the AC that Defendants could not genuinely believe such an exit would produce a *positive* result for the Company.  Quite the opposite.  Plaintiff's cherry-picked statements omit that, moments before discussing sunsetting certain programs, Paucek stated that 2U must "*exit programs that do not fit*."  Ex. 16 at 5.  And he reiterated that sunsetting programs was designed to "*create*[] greater value" for the company at large.  *Id.*; *see* Ex. 1 at 5; Ex. 16 at 5.

Even assuming Defendants "knew of frictions" with USC in August 2023, they "may still have figured that they would be smoothed over."  *Boykin*, 54 F.4th at 186.  This is why the law does not require companies to update investors on every detail of evolving business negotiations; doing so would just confuse investors.  *Newtyn Partners LP v. All. Data Sys. Corp.*, 2025 WL 872967, at *17 (S.D. Ohio Mar. 20, 2025) (no duty to disclose one of defendant's "most important"

13

clients' alleged "intent to exit the program" or "the status of ongoing contract negotiations"); *In re Lions Gate Entm't. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 24-25 (S.D.N.Y. 2016) (similar).

### B.    The Non-Fraudulent Inference Is More Compelling

Plaintiff's scienter theory also is nowhere near "as compelling as [the] opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor*, 551 U.S. 308 314 (2007).  Lacking any plausible motive to deceive, the more compelling theory here is the innocent one: that Defendants genuinely believed their "industry re-defining" transformation would succeed, as their statements said.  Mot. 26.  That may have proven to be too optimistic, but the law is well-settled that business strategies that do not "pan out" do not constitute securities fraud.  *San Antonio Fire*, 75 F.4th at 244.

Plaintiff responds that this opposing inference is "directly contradicted by the [AC]'s allegations, including the accounts of 2U's former employees."  Opp. 27-28.  Nonsense.  The FEs did not purport to speak on what Defendants believed.  Nor does anything else in the AC.  This argument simply assumes Plaintiff's distorted interpretation of his alleged facts.  But the PSLRA demands a "comparative inquiry" into "[h]ow likely is it that one conclusion" (i.e., the inference of scienter), "as compared to others" (i.e., a nonculpable inference), "follows from the underlying facts." *Tellabs*, 551 U.S. at 323.  Here, it is far less likely that Defendants intentionally misled the market about 2U's prospects (for no personal benefit), rather than acted in good faith under difficult circumstances—especially since Defendants warned investors of potential risks.  Mot. 25.

## III.    PLAINTIFF HAS NOT PLED LOSS CAUSATION

This lawsuit fails for yet a third independent reason: Neither of the two purported corrective disclosures alleged in the AC revealed new information that "relate[d] back to the [alleged] misrepresentation[s], as opposed to "some other negative information about the company." *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 472-73 (4th Cir. 2011); *see* Mot. 29-30.

Plaintiff argues that the first "corrective disclosure"—confirmation that USC and 2U were

14

winding down their partnership—"revealed" that prior statements about Partners were false. Opp. 29. But Defendants never stated that USC would stay forever, and USC's exit did not render general, optimistic statements about Partners *as a whole* false. *See supra* at 9-10. Plus, 2U previewed USC's wind-down the earlier quarter. Mot. 30. Although Plaintiff argues this prior disclosure was "misleading," he provides no further argument or caselaw in support. Opp. 29.

Plaintiff's second corrective disclosure—a press release discussing 2U's portfolio-management activities and stating there was "substantial doubt about [2U's] ability to continue as a going concern," ¶¶ 249-51—suffers the same defects. Defendants disclosed portfolio-management activities as early as February 2022, Mot. 5-6, and the "going concern" statement did not "correct" Defendants' general statements about Partner institutions or the transition. *See, e.g.*, *Leykin v. AT & T Corp.*, 423 F. Supp. 2d 229, 244-45 (S.D.N.Y. 2006) (even though company's disclosures noting "substantial doubt about our ability to continue as a going concern" were "dire," "nothing in those statements disclosed that the alleged misrepresentations had been false"). In any event, concerns about 2U's debt maturities were hardly novel, as the AC itself emphasizes. *See* ¶¶ 115, 140. Plaintiff's failure to plead loss causation is a stand-alone reason to dismiss the AC.

## IV.   PLAINTIFF HAS NOT PLED A SECTION 20(a) CLAIM

Plaintiff's Section 20(a) claim should be dismissed for the same reasons. Mot. 30.

### CONCLUSION

Defendants request that Plaintiff's AC be dismissed with prejudice.

15

Dated: June 5, 2025

Respectfully submitted,

/s/ *Matthew J. Peters*
Andrew Brian Clubok (admitted *pro hac vice*)
Matthew J. Peters (Bar No. 21902)
Christina R. Gay (*pro hac vice* pending)
Latham & Watkins LLP
555 Eleventh Street, NW Suite 1000
Washington, DC 20004
Tel: +1.202637.2200
Fax: +1.202.637.2201
andrew.clubok@lw.com
matthew.peters@lw.com
christina.gay@lw.com

Melanie M. Blunschi (admitted *pro hac vice*)
Latham & Watkins LLP
505 Montgomery Street Suite 2000
San Francisco, CA 94111
Tel: +1415.391.0600
melanie.blunschi@lw.com

*Attorneys for Defendants Christopher Paucek,
Paul Lalljie, and Matt Norden*

16